# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JOHN W. BURNS, JR.,

        Plaintiff,

        v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY STATE FARM
LIFE INSURANCE COMPANY, and STATE
FARM FIRE AND CASUALTY,

        Defendants.

Case No. 25-2190-JAR-GEB

## MEMORANDUM & ORDER

Plaintiff John W. Burns, Jr. filed his Second Amended Complaint in this action alleging that Defendants State Farm Mutual Automobile Insurance Company, State Farm Life Insurance Company and State Farm Fire and Casualty (collectively "State Farm") retaliated against him in violation of Kansas public policy by terminating him as an insurance agent after he voiced concerns about Defendants' activities, policies, investigations and/or procedures. The matter is now before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 27) for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The motion is fully briefed, and the Court is prepared to rule.[1] For the reasons stated below, the Court grants Defendants' motion to dismiss.

---

[1] In his response brief, Plaintiff "incorporates his original arguments from his prior response Memorandum pertaining to defendant's first Motion to Dismiss." Doc. 28 at 2. The Court has reviewed Plaintiff's response to the previous motion to dismiss in deciding this motion.

## I.    Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[2] and must include "enough facts to state a claim for relief that is plausible on its face."[3] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[4]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[5]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[6]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegation can be proven.[7]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the Court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[8]  Thus, the Court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9]  Second, the Court must

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

[3] *Id.* at 570.

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[6] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[8] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[9] *Id.* at 678–79.

determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

Under Rule 12(d), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Although "[t]he 'usual rule' is 'that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss,' . . . 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[12]  Here, Defendants submitted one exhibit with their motion to dismiss: the declaration of Michele Bennington, State Farm's Agency Administration Leader, verifying that the attached State Farm Agent's Agreement ("Agent's Agreement") was a true, accurate copy of the agreement between Plaintiff and Defendants.[13]  The Agent's Agreement in this case is central to Plaintiff's claim because it sets forth the relationship between the Parties as alleged in the SAC.  Plaintiff does not dispute the agreement's authenticity.  Thus, the Court considers this document in conjunction with Defendant's motion to dismiss without converting the motion to a summary-judgment motion.

---

[10] *Id.* at 679.

[11] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[12] *Waller v. City & Cnty. of Denv.*, 932 F.3d 1277, 1282 (10th Cir. 2019) (alteration omitted) (first quoting *Alvarado v. KOB-TV, LLC*, 493 F.3d 1201, 1215 (10th Cir. 2007); and then quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[13] Doc. 27-2.

## II.    Background

The Court takes the following facts from the Agent's Agreement and the Second Amended Complaint ("SAC"), accepts them as true, and views them in the light most favorable to Plaintiff, as well as all reasonable inferences that can be drawn from those facts.

Plaintiff was a full-time State Farm insurance agent for over five years and performed his work in a successful, competent, and satisfactory manner.  The parties entered into the Agent's Agreement on February 1, 2018.  Under the terms of the Agent's Agreement, either Plaintiff or Defendants could terminate their relationship at will.

The Agent's Agreement includes terms concerning the parties' relationship, including that Plaintiff was precluded from working as an insurance agent for any other companies; precluded from any other work absent State Farm approval; required to maintain certain office hours; precluded from changing office locations without State Farm's prior approval; required to adhere to State Farm's policies, branding guidelines, and operational procedures concerning customer service, marketing, and the conduct of their business, upon which Plaintiff was evaluated for performance; subjected to termination upon State Farm's unilateral decision; required to undergo paid training as a new agent and ongoing mandatory annual training; subjected to annual assessment, annual compliance reviews, and periodic internal audits; required to meet specific performance targets related to sales, customer service, and other operational metrics, which targets closely resembled the quotas, performance standards, and expectations placed on employees to qualify for bonuses and other incentives; required to use the State Farm computer system and State Farm-issued equipment and had to pay for such use based on the size of his book of business with policyholders; precluded from using a wireless mouse or keyboard or any form of personal computer; required to sign a one year non-compete provision;

precluded from obtaining insurance agent licensing outside of his home state and/or within 75 miles of his office; paid a guaranteed base salary or an initial salary his first few years of operation in addition to commissions; provided certain company-sponsored benefits such as insurance for health, life, and optional dental, vision, and disability insurance; provided with performance-cased bonuses, profit-sharing, and incentives, including tying bonuses to achieving certain licensing requirements; and provided with continuous marketing support, business resources, and customer leads from State Farm.

During the time he was a State Farm agent, in one or more extended dialogues, Plaintiff voiced concerns to State Farm management, including Bennington and Leonard Kaigler, Vice-President, Sales and Administration. Plaintiff expressed concerns about Defendants' policies and/or procedures that directly impacted the livelihoods of Defendants' customers and/or clientele, and legalities pertinent to the issuance of and/or payment upon one or more life insurance policies including relating to the illegality of State Farm's denial of coverage on one or more life insurance policies.

Defendants denied these concerns and thereafter subjected Plaintiff to a course of retaliatory treatment culminating in Plaintiff's termination on November 8, 2023.

## III. Discussion

Plaintiff's sole claim in the SAC is retaliatory discharge in violation of Kansas public policy. "Kansas follows the common-law employment-at-will doctrine, which allows employers to terminate employees for good cause, for no cause, or even for the wrong cause."[14] Under Kansas law, it is well-settled that absent an implied or express contract "between an employee

---

[14] *Goodman v. Wesley Med. Ctr., LLC*, 78 P.3d 817, 821 (Kan. 2003).

and his employer *covering the duration of* employment, the employment is terminable at the will of either party."[15]

The Kansas Supreme Court has recognized an exception to the at-will employment doctrine for retaliatory discharge.[16]  But the Kansas Supreme Court has recognized public policy exceptions to the employment-at-will doctrine in only five instances: (1) filing a claim under the Kansas Workers Compensation act; (2) whistleblowing; (3) filing a claim under the Federal Employers Liability Act ("FELA"); (4) exercising a public employee's First Amendment right to free speech on an issue of public concern; and (5) filing a wage claim under the Kansas Wage Payment Act.[17]

So, to prevail on a retaliatory discharge claim, an employee must demonstrate that they fall within one of the exceptions to the employment-at-will doctrine.[18]  Here, Plaintiff relies on the "termination for whistleblowing" exception.[19]  As the Kansas Supreme Court explained in *Palmer v. Brown*,[20]

> Public policy requires that citizens in a democracy be protected
> from reprisals for performing their civil duty of reporting
> infractions of rules, regulations, or the law pertaining
> to public health, safety, and the general welfare.  Thus, we have no
> hesitation in holding termination of an employee in retaliation for
> the good faith reporting of a serious infraction of such rules,
> regulations, or the law by a co-worker or an employer to either
> company management or law enforcement officials (whistle-
> blowing) is an actionable tort.[21]

---

[15] *Johnston v. Farmers Alliance Mut. Ins.*, 545 P.2d 312, 315 (Kan. 1976) (emphasis added); *see also Frye v. IBP, Inc.*, 15 F. Supp. 2d 1032, 1046 (D. Kan. 1998).

[16] *Flenker v. Williamette Indus., Inc.*, 967 P.2d 295, 298–99 (Kan. 1998).

[17] *Campbell v. Husky Hogs, LLC*, 255 P.3d 1, 4, 7 (Kan. 2011).

[18] *Goodman*, 78 P.3d at 821.

[19] *Id*.

[20] 752 P.2d 685 (Kan. 1988).

[21] *Id*. at 689–90.

6

Defendants argue that the whistleblowing public-policy exception to the employment-at-will doctrine does not apply to Plaintiff for three reasons: (1) Plaintiff is an independent contractor and such a claim is not available to an independent contractor; (2) a retaliatory discharge claim is not available where there is an employment contract; and (3) Kansas law does not recognize a claim of retaliatory termination in violation of public policy based on K.S.A. § 40-447.

### A.    Whether Plaintiff is an Independent Contractor

First, Defendants argue that the public policy exception applies only to employees, not independent contractors.[22]  To be sure, there is support for Defendants' assertion that State Farm agents are independent contractors.[23]  But Plaintiff points to facts pled in the SAC that State Farm exercised such control over Plaintiff that he was not an independent contractor but an employee of State Farm under the 20 factors outlined by the Kansas Supreme Court in *Craig v. FedEx Ground Package System, Inc.*[24]  These factors are highly fact-intensive and focus on whether the employer has a right to control the employee.[25]  The Court has reviewed these factors and the facts pled in the SAC and concludes that, at this stage of the proceeding, where

---

[22] *See Rebarchek v. Farmers Coop. Elevator*, 35 P.3d 892, 903–04 (Kan. 2001); *Talley v. Washburn Univ.*, No. 11-2597-CM, 2012 WL 1828926, at *3–4 (D. Kan. May 18, 2012).

[23] *See Thomason v. Prudential Ins.*, 866 F. Supp. 1329, 1336–37 (D. Kan. 1994) (holding an insurance agent is an independent contractor and noting that conclusion was consistent with the Tenth Circuit law, as well as the vast majority of cases in other jurisdictions) (citing *Oestman v. Nat'l Farmers Union Ins.*, 958 F.2d 303 (10th Cir. 1992))); *cf. Deal v. State Farm Cnty. Mut. Ins.*, 5 F.3d 117, 119 (5th Cir. 1993) (holding insurance agent was an independent contractor and not an employee under Title VII and the ADEA because company did not control agent, and the economic realities of her relationship did not suggest an employer/employee relationship); *Vasinda v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 17684807, *8 (M.D. Pa. Sept. 22, 2022) ("Given this rising tide of case law" over the years, a "broad consensus has emerged in the courts favoring the view that insurance agents are independent contractors, rather than employees"; "we have little difficulty concluding that [the plaintiff], as an insurance agent, was an independent contractor and not an employee of State Farm" under Title VII and the ADEA).

[24] 335 P.3d 66, 75–76 (Kan. 2014).

[25] *Id.*

the Court assumes the facts alleged are true, Plaintiff has sufficiently pled that Defendants exerted control over his activities as an insurance agent.

**B.      Whether the Contract Provided an Adequate Remedy**

Second, Defendants argue that the public policy exception to the employment-at-will doctrine does not apply because the parties' relationship was contractual, governed by the Agent's Agreement.  Defendants are correct that the public policy exception, which allows employees a common law tort claim for retaliatory discharge, does not apply when the employee has an alternative adequate remedy under statutory law, or under the terms of an employment contract.[26]  But Defendants have not shown that the Agent's Agreement between the parties provided an alternative adequate remedy for Plaintiff's termination because the Agent's Agreement provided for termination at the will of either Defendants or Plaintiff.[27]  Thus, although there is a contract between these parties, by its terms, Defendants could terminate Plaintiff at will, giving Plaintiff no contractual remedy for his termination.[28]  Thus, the Court cannot find that this public policy exception does not apply.

**C.      Whether a Public Policy Exception Exists Based on K.S.A. § 40-447**

Defendants' third and more compelling argument for dismissal is that the statute that Plaintiff relies upon, K.S.A. § 40-447, does not create a public policy that serves to protect a whistleblower from retaliatory discharge.  As the Kansas Supreme Court explained in *Palmer*,

---

[26] *Polson v. Davis*, 895 F.2d 705, 709 (10th Cir. 1990) (explaining public policy exception not applicable where there is an adequate alternative remedy under Kansas statutory law).

[27] Doc. 27-2 at 6, sec. III.A.

[28] The Agent's Agreement includes a provision that entitles Plaintiff, upon request, "to a review in accordance with the termination review procedures approved by the Board of Directors of the Companies, as amended from time to time."  Doc. 27-2 at 6, sec. III.B.  But it is not clear from the Agreement whether this gives Plaintiff a right to challenge his termination, or merely a right to review the processes inherent in a termination or unwinding of the insurance agent relationship with State Farm.

the public policy exception to the employment-at-will doctrine serves to protect whistleblower employees who report "infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare."[29]  The Kansas Supreme Court has directed courts tasked with determining whether a public policy exists to consider whether the legislature has either clearly declared the state's public policy, or enacted statutory provisions from which public policy may reasonably be implied, even though not directly declared.[30]  In addition, "Kansas courts look at whether a strongly held state public policy exists such that endorsing another exception to the at-will employment doctrine 'is necessary to protect' this policy 'from being undermined.'"[31]

K.S.A. § 40-447 states:

> (a) Notwithstanding any other provision of law, each insurer admitted to transact life insurance in the state of Kansas which fails or refuses to pay the proceeds of, or payments under, any policy of life insurance issued by it within 10 days after the date of receipt of due proof of death in the manner and form requested by the policy, shall pay interest on any moneys payable and unpaid after the expiration of such 10-day period at an annual rate of not less than the current rate of interest on death proceeds left on deposit with the insurer plus 1% computed from the date of said receipt.
>
> (b) Nothing in this section shall be construed to allow any insurer admitted to transact life insurance in this state to withhold payment of money payable under a life insurance policy to any beneficiary for a period longer than reasonably necessary to transmit such payment.
>
> (c) In any case in which interest on the proceeds of, or payments under, any policy of life insurance becomes payable pursuant to subsection (a), the insurer shall notify the named beneficiary or beneficiaries at their last known address that interest will be paid on the proceeds of, or payments under, such policy from the date

---

[29] *Palmer v. Brown*, 752 P.2d 685, 689–90 (Kan. 1988).

[30] *Campbell v. Husky Hogs, LLC*, 255 P.3d 1, 5 (Kan. 2011).

[31] *Goolsby v. Mgmt. & Training Corp.*, No. 14-4019-SAC, 2014 WL 2988748, at *5 (D. Kan. July 2, 2014) (quoting *Campbell*, 255 P.3d at 5).

of receipt of due proof of death of the named insured.  Such notice shall specify the rate of interest to be paid.

(d) This section shall not require the payment of interest in any case in which the beneficiary elects in writing delivered to the insurer to receive the proceeds of, or payments under, the policy by any means other than a lump sum payment thereof.

(e) The commissioner of insurance may adopt such rules and regulations necessary to provide for the enforcement and administration of this act.[32]

K.S.A. § 40-447 thus provides that an insurer must pay interest to beneficiaries if it pays the life insurance claim more than 10 days after it receives due proof of death in the manner and form required by the insurance policy.  Notably, the statutory requirement that insurers must pay interest if they do not pay within 10 days is expressly limited to payment of "payable" claims, not necessarily all claims.

It is unclear from the SAC whether the conduct Plaintiff claims is the basis for his retaliatory discharge even involved this statute.  The SAC is vague and conclusory in that regard. It states that Plaintiff "engaged in one or more extended dialogues with his management at State Farm involving legalities pertinent to the issuance of, and/or payment upon, one or more life insurance policies held by customers."[33]  The SAC further states that Plaintiff "on multiple occasions chose to voice concerns to State Farm about defendants' activities, policies, investigations and/or procedures that directly impacted the livelihoods of defendants' customers and/or clientele, and which were matters of legality pursuant to Kansas law."[34]  But the SAC does not state whether he reported that Defendants failed to comply with K.S.A. § 40-447.

---

[32] K.S.A. § 40-447.

[33] Doc. 25 ¶ 15.

[34] *Id*. ¶ 16.

And other conduct referenced in the SAC seems to go beyond the scope of K.S.A. § 40-447.  The SAC states "[a]s regards these matters of legality, plaintiff Burns expressed concern to his State Farm management . . . relating to the illegality of State Farm's position denying coverage relative to one of more policies of life insurance held by certain insured of State Farm."[35]  Yet, K.S.A. § 40-447 sets forth a statutory requirement that delayed payments must be paid with interest; it has nothing to do with denials of coverage.

Furthermore, Plaintiff points to no authority, and the Court has found none, that this statute is a clear declaration of Kansas public policy pertaining to public health, safety and general welfare that provides a basis for a retaliatory discharge claim under the public policy exception to the employment-at-will doctrine.  And Plaintiff points to no authority, and the Court has found none, that this statute provides a basis for a whistleblower claim of retaliatory discharge.  In fact, Plaintiff admits there is "a dearth of caselaw on the applicability of" this statute in this situation.[36]  In contrast, there is no dearth of cases addressing the type of violative conduct that is addressed by Kansas public policy pertaining to public health, safety, and the general welfare.[37]

Plaintiff asserts that this statute "represents the expression of Kansas public policy as relates to the insurance industry, with the legislature making clear that the timely, proper

---

[35] *Id*. ¶ 17.

[36] Doc. 28 at 16.

[37] *See, e.g.*, *Connelly v. State Highway Patrol*, 26 P.3d 1246, 1266 (Kan. 2001) ("[W]e hold here that the actions of the troopers in openly denouncing and protesting within their chain of command to other 'law enforcement officials' illegal activity in not enforcing laws designed for public safety may be protected internal whistleblowing and was correctly submitted to the jury for its determination."); *Flenker v. Williamette Indus., Inc.*, 967 P.2d 925, 303 (Kan. 1998) (concluding OSHA violations for machine safety were sufficient to support state-law tort claim for retaliatory discharge because the federal OSHA remedy was inadequate); *Palmer v. Brown*, 752 P.2d 685, 689 (Kan. 1988) (recognizing retaliatory discharge claim based on reporting Medicaid fraud).

payment of claims is a tenet of Kansas law, and by extension Kansas public policy."[38]  But a plaintiff's subjective view that a statute establishes public policy is of no consequence.[39] "Instead, public policy 'should be so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt.'"[40]  Plaintiff fails to point the Court to any evidence that K.S.A. § 40-447 establishes public policy sufficient to support a claim of retaliatory discharge beyond his own personal opinion.

In short, there is no clearly defined public policy in Kansas, nor express or reasonably implied statutory basis for a public policy based on K.S.A. § 40-447 that would support Plaintiff's claim of retaliatory discharge.  Nor will this Court, sitting in diversity and applying Kansas law, recognize a new exception to the Kansas employment-at-will doctrine given the narrow circumstances under which Kansas courts have allowed a tort claim of retaliatory discharge based on public policy exceptions to the employment-at-will doctrine.  When a court sits in diversity and decides a question of state law, it must determine or predict what the highest court in that state has or would decide.[41]  And the Kansas Supreme Court has itself required that for an expansion of the rules, regulations, and laws that are recognized grounds for retaliatory discharge claims in violation of Kansas public policy, the public policy must be "definite" and

---

[38] Doc. 28 at 16.

[39] *Cain v. Kan. Corp. Comm.*, 673 P.2d 451, 455 (Kan. Ct. App. 1983) (declining to expand the categories of rules, regulation, or law that are recognized grounds for retaliatory discharge claims and explaining that the plaintiff's "own personal opinion on how the KCC should carry out the statutory purposes of the [Kansas Securities Act] is not public policy"); *Aiken v. Bus. & Indus. Health Grp., Inc.*, 886 F. Supp. 1565, 1574 (D. Kan. 1995) (stating that a plaintiff's personal views regarding statutes and ethical codes are not public policy); *Goodman v. Wesley Med. Ctr., LLC*, 78 P.3d 817, 823 (Kan. 2003) ("Public policy cannot be determined on a subjective basis.").

[40] *Goodman*, 78 P.3d at 823 (quoting *Palmer*, 752 P.2d at 688).

[41] *Wade v. EMASCO Ins.*, 483 F.3d 657, 665-66 (10th Cir. 2007).

"fixed" to establish a clear mandate of Kansas public policy, and the "whistleblowing must be based on violations of [those] specific and definite rules, regulations and laws."[42]

Absent a more definitive statement from Kansas courts or the Kansas Legislature of a public policy in Kansas to make actionable retaliatory discharge based on reporting violations of K.S.A. § 40-447 or denials of coverage plaintiff deems illegal or inappropriate, this Court declines to extend Kansas law to by applying the public policy exception urged by Plaintiff in this case.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss Second Amended Complaint (Doc. 27) is **granted**.  The Clerk is directed to enter judgment in favor of Defendants and terminate this action.

**IT IS SO ORDERED.**

Dated: March 19, 2026

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> UNITED STATES DISTRICT JUDGE

---

[42] *Goodman v. Wesley Med. Ctr., L.L.C.*, 78 P.3d at 822–23.

14